Case number 17-5259. Rhea Lana, Inc. NL Appellants v. United States Department of Labor Ms. Smith for the appellants, Ms. Foster for the appellate. Good morning, Your Honors. May it please the Court, Julie Smith, Cause of Action Institute for the Appellants here, Rhea Lana, Inc., and Rhea Lana's Franchise Systems, Inc. I would note that Ms. Rhea Lana Reiner, the proprietor, is here with us today. And I would like to reserve two minutes for rebuttal. Your Honors, this case presents the question of whether consignor volunteers who... That is the question, whether they're volunteers, isn't it? Sorry. That is the question. Well, we refer to them as consignors slash volunteers.  Whether they are employees under the Fair Labor Standards Act or actually volunteers. For that portion of time which they were permitted and allowed to work at the consignment sales of gently used children's clothing twice a year, which took place both the setup and the sales themselves over a period of seven or eight days twice a year. Can I just ask, you said twice a year? Correct. I've seen references in the record to these sales happening sometimes six times a year, sometimes three times a year. Is it six, three, or two? Your Honor, I think the confusion relates to the different locations. There are different places where the sales take place. Just walk me through. Okay. It's both an operation of Realana, Inc., which operates sales as well as a franchise operation. Other franchisees would franchise the template and the model and hold their own sales in other locations. I actually don't know, as I stand here, Your Honor, how many total sales there would be for both of those in a given year at all locations. What is true, what is in the record is that at any one location, at any one city, there would be a semi-annual sale. It would be twice a year. Twice a year at any given location? Correct. And how far apart are the locations? Are we talking like different states, different cities, different neighborhoods? Both, Your Honor. Both. Both different states and different cities. So, Your Honors. So, sorry, two times a year and each sale lasts seven or eight days? If you include the total time for getting to the location, setting it up, holding the sale, and then breaking it all down. And the offer to the volunteers is you can, for any given sale, you can volunteer in increments of five hours from five to 20? Correct. Five hours, 10, 15, or 20? That's what you offer? Correct, Your Honor. And I would add that it's important to note that there's no question here of pure volunteers who are not consigning their own goods in the events. No, I understand. They're all both consignors and volunteers, using that term as it was used in the business. So, Your Honors, the district court granted the motion for summary judgment of the Department of Labor here and denied the motion for summary judgment of appellants. It also denied appellants' motion to strike the declaration of Robert Darling, which was submitted three years after the fact in an attempt to justify the decision made in 2013. Your Honor, in all three of those rulings, the district court erred. So can we start with Darling? Yes. Suppose, just assume that you are not entitled to judgment as a matter of law. It's very hard for me to assume, Your Honor, but I will. But the reason I frame it that way is you make what seems to be a doctrinally plausible case for a remand because Darling's affidavit, his post hoc, came in for litigation. But doesn't that seem a little bit pointless where he is the decision maker and he has told us exactly what his reasoning was and why he made the decision? And if, you know, there's no question what it was, and if it's good enough to survive, we're just sending everyone on a pointless exercise and multiplying litigation costs and just prolonging the inevitable. And that's exactly the problem, Your Honor. It's not good enough to survive. Mr. Darling's analysis, even if you credit— Well, okay, that's an argument why you might win if we consider Darling, but I want to start with the question, you know, whether we should or not, in a case where it seems like it's clearly too much too late, but the remand seems pretty pointless. Well, Your Honor, to that point, if we put aside the Darling declaration, if we assume for the moment that it properly came into the record, which I will for these purposes, it's clear on the record, including even the Darling declaration from 2016, that the legal analysis of the Department of Labor and Mr. Darling himself was fundamentally legally impermissible. It failed to take account of governing Supreme Court precedent in the Walling v. Portland terminal case, the first decision of the Supreme Court directly on point, and the Alamo case, which is also on point. Your Honors, those two Supreme Court precedents set out a spectrum. On the one hand, you have Walling v. Portland terminal, where the Supreme Court determined that— Where are you in your analysis? Because I thought the question that was being asked is, suppose, just assume for purposes of argument, that we think that if the Darling declaration is properly in, then it's enough. That at that point— I'm sorry, if— Why should we not consider the Darling declaration? Let's try it that way. Okay. You should not consider the Darling declaration because it is transparently a post hoc rationalization trying to reverse engineer a permissible basis for the determination in August of 2013. And the Department of Labor cites the Olivares case as precedent for permitting a post hoc declaration. Your Honors, in that case, the declaration at issue was less than five months after the actual determination. This is a case where the declaration was submitted three years and— So it can't just be the time because I don't see a fundamental legal distinction between five months and three years. They're both post hoc. They both come in after the fact. If they both seek to explain what the rationale was at the time of the decision, what's the point of remanding if we just know that the declaration is going to be resubmitted again? Your Honor, if it is submitted again and it takes substantially the form that it does now, it will show, again, that the analysis undertaken by Mr. Darling was legally insupportable because he failed to take account of the governing Supreme Court precedent, which says clearly there can be volunteers for for-profit enterprises. That's the whole— But you're just coming back to your second level of argument that Darling is arbitrary and capricious. That's correct. I'm still trying to drill down on why we consider it at all. Why we consider the question of whether— Your Honor, I'm trying to make the argument for the Department of Labor here, but the argument is that— What's your argument for keeping it out when it just seems like, all right, we'll remand to the agency and Darling will take the same document and use the same words and say the same thing? No, no, Your Honor. And then we go back to district court and then you're here two years from now? No, Your Honor. The Darling Declaration shows itself, if you take it at face value, that the analysis, incorrect, it was arbitrary and capricious and not in accordance with law. It does not pass. We don't have to exclude it in order to hear that argument. That's correct, Your Honor. That's what I'm trying to get across. I'm not making my point, apparently. If the case were remanded, would the Department of Labor be out of time? Your Honor, if the case were remanded, the court should reverse the district court's grant of summary judgment to the Department of Labor on the basis that the Department of Labor's policy as put forward in the declaration and all the relevant documents in the record contemporaneously that show the analysis is simply not in accordance with law. So can I ask the question this way? It sounds to me like you're not opposing our consideration of the Darling Declaration because your argument is that even if we consider it, it's not enough as a matter of law. That's correct, Your Honor. I thought you had an argument that we shouldn't be considering the Darling Declaration at all, not because it's legally insufficient, because that means go ahead and consider it. I still win. Your Honor. If you're now saying it's okay for us to consider the Darling Declaration, then we'll consider it. But I thought you had a different argument, which is that… Your Honor, we've argued both. We've argued both, and we've argued both to the district court as well. We said that the document should be stricken, the declaration should be stricken because… But I guess what I'm confused by is it seems like every time we're trying to focus on why shouldn't we consider the Darling Declaration, I'm getting the sense that your response is because if you do, it wouldn't be enough. We'd still win. Well, Your Honor, I don't think that the court needs to strike the Darling Declaration or not consider it in order to reverse here. But are you or are you not continuing to press the alternative argument that we should not consider it at all? Your Honor, I do think that the court erred because it was an abuse of discretion to let that declaration into the record. So, yes. But, again, I don't think that the court needs to go there in order to reverse the district court. Okay. Can I ask you a question on the subsidies? So as I understand the compensation system that's in place for managers, managers can decide to forego wages if they would prefer to get early access to the sales. Your Honor, the managers were actually paid back wages. That was one of the outcomes of the investigation. Right. I know that as a remedy they were paid back wages. What I'm saying is, as I understood it, what the company offered to the managers is the opportunity if they wanted to, to forego making their wages for the first 12 and a half hours if they wanted to get early access to the sales instead. I believe that is true at some points during. So if that's true, that seems like a pretty persuasive indication that early access to the sales is the functional equivalent of compensation because it's a direct substitute. Your Honor, the fact that they're offered that choice to exchange. And some of them took it. They were offered that choice and some of them took it doesn't answer the question of whether the opportunity for early shopping is actually compensation. The opportunity is just that. You may go into the sale, you may be there before anyone else, you may browse, and you may decide not to buy anything. It may be of tangible benefit to you or it may not. It is an opportunity. I don't. You can forego $40 and have early access, right? Correct. So there's a monetary value clearly associated with this. Now, you may not pay out. It's just an opportunity. If you gave the employees, the volunteers, 40 lottery tickets, that would clearly be compensation, wouldn't it? I'm sorry, Your Honor. If you gave them 40 lottery tickets, that would be compensation. It might be on a totality of the circumstances test, which is what that says. What more would you have to know? You go out and buy 40 lottery tickets and give it to each of the people? That's clearly compensation. Well, and I guess it seems to me the point is the company seems to be treating it as compensation because the company has a policy that says I'll give you one of two things. I'll either pay you $10 an hour or I'll give you access, four hours early access to the sale. That's the two ways that I'm going to recompense you for, compensate you for the services that you're providing me. It seems like the company itself is treating them as functional equivalents. But, Your Honor, the company itself treated the managers as employees. The company recognized, so all the other circumstances in the economic relationship granted, and the company recognized that that was an employee-employer relationship for the managers. I don't think that the court can analogize the consignor volunteers to that. No, and I'm asking why not, because if the company treats the managers as employees and the way it compensates its employees is it says, I'll compensate you in one of two ways. Basket A, I'll give you $10 an hour. Basket B, I'll give you early access to the sales. And it has a different group of people who it asks to do services for them. I won't call them employees yet because I understand that's the conclusion. But it has a different population of people, and it says, for you, I'm only going to give you Basket B, which is what's going on because it's giving them early access. It just sounds to me like what the company is saying is I'm not giving you Basket A, I'm giving you Basket B, but Basket B is just an alternative to Basket A, and Basket A is wages. But, Your Honor, they're different relationships. They're very different relationships. The managers are not consignors. The consignor volunteers are. We're just probing the narrow point whether this kind of opportunity is something of value, is an in-kind quid pro quo for the services provided. Clearly, Your Honor, for some people they found that to be of value, much as in the Cathedral Buffet case out of the Sixth Circuit, Your Honor, which determined that there was no compensation, people were incentivized by their local church to volunteer, quote, unquote, at the restaurant. The fact that they're incentivized and that they find some value in it does not answer the question of whether it's compensation. Suppose same situation except instead of offering the opportunity for early access to sales, they offer a nice breakfast and a nice lunch for people. Your Honor, I think that that would weigh heavily against it being compensation. I think that... Why isn't that exactly, in the hypothetical, that's exactly the kind of in-kind compensation that the cases, that Alamo specifically says can be the equivalent of money wages? Can be under certain circumstances, Your Honor, if the totality of the circumstances demonstrates, among other things in the Alamo case, dependence, essentially dependence over a long period of time on that economic relationship, then yes, indeed, where people are dependent for room and board over a long period of time on the foundation, yes, that can be compensation. I don't think Alamo stands for the proposition that in your hypothetical, Your Honor, ipso facto, a free breakfast or a nice lunch is compensation. I don't think it stands for the proposition that ipso facto, you're an employee, but I'm not sure why it doesn't support the proposition that this is the kind of quid pro quo that if other things like duration and dependence are satisfied. Your Honor, I think it is a factor in the analysis, and I think the other factors can make it not so significant. For instance, if you're talking about twice yearly sales, where there are people bringing their own clothes to sell, et cetera. So, Your Honors, I am out of time, unless there are other questions. Thank you. May it please the Court, Sydney Foster for the government. Your Honors, the Department of Labor's determination on the employee question at issue here was not arbitrary or capricious. What we have here is a company that is seeking to turn a profit. Before we get to the merits, can we just start with the question of whose explanation we should be reviewing? Right. Should we look at the Darling Declaration? So, we do think that the Court should look at the Darling Declaration. We think the Court could also affirm without looking at it. The decision memo is completely unreasoned. The declaration does help to tie the record together. That is certainly true. I mean, if you just assume, for the sake of argument, that if my review were limited to the decision memo itself, I would find it unreasoned. So, then the question is, can we look to the Darling Declaration? And it seems, I mean, I get the point about futility, but it seems like if we allow the government to supplement, to give the entirety of its reasoning in an affidavit generated during litigation, as against an administrative order that, by hypothesis, is wholly unreasoned, we've just done a huge end run around Chenery and State Farm and the dozens, if not hundreds, of cases where if we find an explanation is inadequate, we remand. Right, so a couple of responses, two main responses. Number one is that it's well recognized in cases like Camp V-Pitts and Olivares that it is okay to rely on rationales that are offered in an agency declaration like this, even though it is submitted during litigation and is post hoc in that sense. It doesn't run afoul of State Farm because it's still actually the reasoning of the agency decision maker. It's not as if I, as government counsel, am offering the rationale. So if you look at that line of cases, it seems that the two circumstances in which we allow the ex post affidavit are primarily, number one, it's just not challenged, or number two, the ex post affidavit is accompanied by a supplementation of the record. Other documents that were contemporaneously created that are put before the court as further justification and then the affidavit is sort of like an authentication piece. And that's when we do it. And when we don't do it, it's cases like AT&T where we say the ex post affidavit is offering something wholly new. And if that's the relevant line, it seems to me you're on the wholly new side of it. Right. I don't think that actually accurately characterizes what the precedent says about when you allow the declarations. In Olivares, for example, the internal documents to which this court referred were simply the documents in the administrative record that were submitted in connection with filing that petition for review. So this case is kind of just like that. The declaration was submitted to the court to helpfully try to explain the agency's rationale since it wasn't necessarily fully clear from the internal documents that were part of the administrative record. The declaration attached previously undisclosed materials and we said there was no new rationalization. In Olivares. Yeah. I mean, I'll check it. Yeah. I don't recall that it attached any new materials. My recollection is that there was a supplemental index of the record. Or sorry, there was an index of the record that was filed in that case that listed the documents in the agency record. Then actually the declaration was included, as it turns out, in a supplemental index of the record. I don't recall that it attached any. I think we treated it as a clarification of what was already in the record. That may well be. But I think, you know, part of the response, Your Honor, is I think. Where I'm getting that from is it says it's a post hoc account, persuasive, however, because it shows the previously undisclosed internal materials, which is contemporaneously created agency records, in fact do state the contemporaneous explanation. Right. Which is different from what's going on here where the ex post document is itself supplying the explanation. Well, I mean, a couple of reasons. One, again, we do think it's just elaborating on kind of the reasoning that was included in the underlying agency documents. But I'm assuming that you don't find that on this basis for purposes of this question. And that's fine. But I don't think that there's actually any case law that holds that the declaration somehow, the rationale in the declaration has to somehow echo what was already in the decision-making record. I mean, that would be fundamentally inconsistent with the notion that final agency decision-makers aren't bound by the reasoning of their subordinates. There's no reason to have some. It seems like it's also the case with informal adjudications that it's naturally going to be the situation sometimes where you're not going to have – it's a snap occasion and you're just not going to have record in the typical administrative, you know, in EPA action. That's right. That we sometimes are used to. And so it's almost by definition going to be an explanation that comes down after the action has been undertaken in an effort to explain to, for purposes of judicial review, why the action was taken in the way that it was. Right. I think that's exactly right. And even if we just put in all this. So what's the limiting principle, then? And how do you account for cases like AT&T? Well, as we explained in our brief, I mean, AT&T, you know, plaintiffs don't actually even rely on AT&T. But AT&T involved very extreme facts where the agency in question just stated in the final agency decision the action it was going to take. It didn't even explain any legal conclusions. This case is very different from that. We at least have a legal conclusion. We just didn't have an elaboration on the reasons for that legal conclusion. And I think we have to read AT&T quite narrowly because otherwise it would be inconsistent with Overton Park. It would be inconsistent with decisions like Olivares. If you look at the final agency decision in Overton Park, it provided no more rationale than the decision here. And yet the Supreme Court said it would have been appropriate to consider affidavits or declarations on remand in that case. Similarly, if you look at the reasoning in Olivares, it offered no more insight into the agency's reasoning in the final agency decision than here. So AT&T, I think, obviously has to be construed quite narrowly. And I think putting all that aside, the points that Your Honors were making in the colloquy with my friend are also worth considering. The whole point that it would be pointless to remand for an explanation that's already before the court. This court has made that point in cases like Olivares, Manhattan, Tankers, Aguayo, many, many cases. Another way of saying that is that it's harmless error. To the extent that it was problematic that Darling didn't explain his rationale for his decision at the time of his final agency decision, then any such error is harmless because we now have his explanation for what he was doing and what he was thinking. The initial decision was based on the independent contractor analysis, correct? The decision by the subordinate? So the decisions by the subordinate, there are two different documents. There's a May document that was basically her notes for a meeting with the plaintiffs. And then there was a June document called the narrative, which kind of goes through some of her analysis. That June document had actually two different kind of parts to it. It had a part where it went through the independent contractor factors and it applied those to the facts here. And then it had a separate part later where it noted that some of the individuals in question considered themselves to be volunteers. And then it explained that the incentive for those individuals, this is at JA 306, the incentive for those individuals to do their work was to get to shop early, which I think is plainly compensation for, among other reasons. Was there a legal conclusion that they were employees because of that compensation? Or was it that they were not independent contractors? So she doesn't have a sentence in her narrative where she says they are not employees because X. And then this discussion of the volunteer factors. So it's not tied together as neatly as you might hope for, which is part of why we offered it. How much time elapsed between that decision memo and the Darling declaration? Three years? That is correct. Keep in mind kind of the reason for that big gap, though, was because we had a whole first round of litigation in connection with the motion to dismiss for lack of final agency action. Had we not had any of that litigation in the declaration. Just to be clear, the analysis you're talking about was not a decision, right? The analysis of the subordinate? Right. That's correct. That was not the final agency decision. Then Darling makes a decision. That's correct. Darling doesn't explain his decision, and then he later comes along and explains his decision. Correct, yes. But we have no way of knowing whether the documents you're now invoking, which are recommendations of a subordinate, were at the time or are now the position of the agency. Because when Darling is the decision maker, he comes along later with his ex post affidavit, and it gives the explanation it gives. It doesn't say, I hereby adopt the recommendations of my subordinates. Right. That's exactly right. But what the declaration says is it uses a whole lot of past tense in the declaration. It's trying to explain what his reasoning was at the time of the decision. It doesn't say, here's how I think the record currently supports. I don't think there's any dispute. I don't understand the other side to be disputing the proposition that the Darling declaration purports to set forth the rationale that Darling applied when he made the decision. I think the question would be, did Darling, when he made the decision, use the rationale adopted by Haynes? Right. And as to that, I don't think we know. I don't see it. I don't think we think so, right? I think Darling is saying, I got a recommendation from Haynes. Here's why I made the decision I did. Right. There's certainly differences in the analysis. I think there's also some overlap in the analysis. So Darling for sure did not rely on independent contractor analysis. We know that. And Haynes did in part. But what Darling relied on was the analysis that's applicable when evaluating volunteer questions under Alamo and the like. And the critical inquiries in that is, are you getting compensation in return for your labor? Is it advancing the bottom line of a for-profit company? Or is it somehow serving your own individual interests? That kind of thing. And there is analysis along those lines in the Haynes declaration. So I'm not saying it's as fulsome as the Darling declaration. It's not, but it does contain components, I think, that are certainly at a minimum consistent with the Darling declaration. And I think the other thing, just to point out in answer to your question, Judge Katz, is about sort of what's to stop agencies from kind of doing this all the time. I'm sorry, about? About what's to stop agencies from just not offering. Right. I mean, that's an understandable concern and obviously one that Olivares was concerned about, noting kind of that persistent scofflaw behavior would not be tolerated. But it's important to understand that in this particular case, when the agency was issuing its decision, it didn't think it was a final agency decision. So it didn't think there was any need to offer an explanation. So it's not like the agency thought this was a decision and was just deciding, I'm just going to rely on that case law that I know is out there. We don't have that here. No, I understand. And I'm not saying there's gamesmanship in this case, certainly. I am worried about the proposition that when we're faced with a decision that's unreasoned, the affidavit can come in and be the basis for an affirmance. In a paradigmatic case in Overton Park, there's no initial decision. I'm sorry, I missed the first part. In Overton Park and cases of that ilk, it's an informal adjudication, there's no decision document until the litigation begins. Here, you have a garbage decision or whatever it is, and then the litigation comes, and then you get a real reasoned decision at that point. So it's sloppiness. It's not that there wasn't an initial reasoned decision. It's that it was sloppy. And it strings the government's – again, it's not manipulative. I don't think this is intentional. But when you do sloppy work and put the party to litigation before you produce something that's reasonable, it's an abuse by negligence, as it were. Yeah, I don't think this was sloppiness. I mean, an agency has limited resources. If it didn't think that the decision was itself a bailout. That may be why it's sloppy, because it has limited resources. But you don't think it's sloppy to have the wrong legal analysis? I know. I mean, I think if agencies aren't issuing final – if they don't think that they're issuing final agency decisions, I don't think it's actually practicable. I thought what happened was that Darling makes a determination. The agency doesn't realize it's a final decision until the D.C. Circuit subsequently tells the agency that it made a final decision. Correct. And then it's only on remand from our prior decision that the agency says, oh, now we realize because the D.C. Circuit has told us that. And the D.C. Circuit, of course, is never wrong. The D.C. Circuit tells us that. And so, therefore, we now know it's a final. And now we know that we made a final decision, and so we're going to supply the rationale for the decision we've now been told we made. Exactly. Exactly. And it's just not practicable to be offering rationales for some decisions that you don't think are final agency decisions. And so I think it was that, not any kind of sloppiness. I think also it's important to keep in mind that, you know, back in, you know, early 1970s, we haven't seen a rash of litigation where agencies are employing it. And I think that makes good sense. It's in part already in the agency's interest to comply with the law and issue, you know, explanations where they're required. But it also just makes practical sense. Memories are the most fresh, obviously, right away. Personnel leave, you know, that kind of thing. Can I just ask, on the merits, can we talk for a minute about duration and dependence? It seems to me the best argument on the other side, which none of the – which Darling or the subordinates or the congressional letters don't address, is that this is an extremely limited engagement. You have people offered to perform work in five-hour increments, up to 20 hours per sale with, you know, let's just say in the given community it's two sales per year. I mean, is there any case that says that sort of engagement makes the volunteer, worker, whatever it is, an employee? Well, so there aren't that many cases out there about kind of the volunteer question. So, no, there's not any such case that says that. There's also not a case that says the opposite. I mean, the two data points from the Supreme Court are training program for one week, not enough. Volunteer relying on the foundation for all of life's necessities, food, shelter, and clothing for an extended period of time is enough. It seems to me more like the first case than like the second. I think it's important, though, to look at the rationales of those two decisions, Walling and Alamo. They didn't turn on the duration. That was like a very minimal – it played a minimal role, I think, what they turned on. I say look to all relevant factors bearing on economic reality. Right, right. To me, the economic reality when someone signs up to work five hours a day to, you know, be able to buy some better clothing is – that's not like a second job, having a second job. Well, multiple courts of appeals have addressed kind of similar circumstances in analyzing independent contractor analysis. So we have, for example, the Second Circuit in Superior Care saying that kind of if there's a short duration, but it's due to the operational characteristics that are intrinsic to the industry, then that shouldn't be counted against kind of an individual in terms of finding that he or she is an employee. It cited – and we, you know, this court in Morrison cited the Fifth Circuit's decision in Mr. W. Fireworks, which that case involved – Yeah, I found that one. Do you have any others? That's like an 11- or 15-day firework season is enough. Yes, that's right, exactly. It was, I think, under two weeks for two times a year. Why shouldn't – if we think this is a significant aspect of this case, why wouldn't we send this back on the ground that the agency failed to consider an important aspect of the problem? I think there can be no question. I mean, this is just one factor in the broader scheme of things. We know from Alamo that kind of the expectation and receipt of compensation is critical. And here there can be no question that the consignor volunteers here were performing this work in order to get the access to the early shopping benefits, which had value to them. So we have that. We have the fact that what's going on here is that the company is seeking to increase its profits by relying on unpaid labor, and it's labor that is contributing to the general business operations of the company. It's increasing their profits. It's not labor that is somehow individually benefiting the individual consigner volunteers. I understand. I'm giving you it's beneficial to the company, there's something of value offered in return, and there's a degree of supervision. It's debatable, but I'll spot you that. It just seems to me this duration idea is different and is the best argument on the other side and is something that the agency ignored. Yeah, I think just when you analyze it in context and considering all these other factors that so clearly point in the employee direction, there's just no question that even if you think that somehow that points against an employee determination, that somehow that means then that they're an employee. That's certainly not a requirement. So same facts as this case except the hypo is the most you could do is volunteer for a five-hour shift. Still an employee? I think the answer would be yes. And every five-hour employee triggers all of the record-keeping machinery of the FLSA? I mean, obviously each case has to be analyzed on its facts. That's not what we have here. I mean, I think one thing to keep in mind is kind of what would be the consequences of a ruling that somehow that is really significant. There are two consequences that I think would be quite problematic. Number one is it would allow individuals who are some of the most vulnerable individuals out there who have to work in multiple part-time and temporary jobs to earn a living. Somehow now the fact that they are- And you assess that based on economic realities. I mean, do you really think it is economically plausible to say that these folks are earning a living based on this five, ten, whatever it is, hours of volunteering? So let's be clear that the standard isn't that they have to be earning a living. That's explained by the Fifth Circuit in Mr. W. Fireworks, which actually rejected a district court that reasoned along those lines. The district court in Mr. W. Fireworks said, oh, it's good for your money. It's economic reality and duration is one relevant consideration. It's certainly one relevant consideration, but it obviously can't be a dispositive one, especially when we have all the other factors pointing in favor of an employee relationship here. Can I ask a question about the duration question, though? Suppose you had a situation in which you had the same arrangement that was offered to managers, except they're not permanent employees of the company. It's just a one-time deal like the hypotheticals that Judge Katz is asking you about. But the terms of the deal are these are individual five-hour shifts. Here's your choice. You can either make $9 an hour or you can get early access to the sale. Would the government, would labor find that those are employees because at least they have the alternative of making wages? If their choice were to make wages or to get early access to the sale? Sure, yes. Then they would be working for compensation, right? And then they're given the choice and you add the early access to the sale as an alternative. Right, right. I don't think that changes the fact that you're getting compensated either through wages or through early access. Even though it's a finite duration and it could be a one-shot deal. I think that's right. One way of thinking about it, too, is if the plaintiffs are right here that this is not an employee relationship, then there's nothing to stop businesses at large from doing things like offering individuals the opportunity to shop sales early or other benefits like that in exchange for just discrete amounts of work. So we could have, for example, Walmarts of the world could be offering individuals the opportunity to shop at their Black Friday sales early if they'll put in eight hours of work. Maybe that only happens once a year, but I don't think anyone would think that that is permissible under the Fair Labor Standards Act, which was enacted, as Welling explained, in order to ensure that individuals whose work contemplates compensation should not be compelled to sell their services for less than the minimum wage. It would also be very inconsistent with one of the other key statutory purposes articulated in Citicorp, which is that companies shouldn't get a competitive advantage that is unfair because they are paying their employees substandard wages and their competitors are paying appropriate wages. Thank you. You'd ask for two minutes, right? I'm getting an extra two minutes, but I have. Thank you, Your Honor. Two things, Your Honor. First, the Walmart hypothetical that counsel just put forward, I think it's important to play that out and realize what the position of the Department of Labor is that people can't be allowed to choose to shop early as an alternative to getting FLSA cash wages. That's essentially the position that the Department of Labor is making here, and they can't even do that for the decision to shop early on Black Friday. The second thing, Your Honor, is on the Darling Declaration, apart from the delay in presenting the Darling Declaration, the biggest problem with it is that it is inconsistent with the rest of the administrative record. As informal or thought to be informal decisions go, this is a fairly well-documented one, Your Honors. There were multiple items of correspondence with members of Congress. There was a documentation of a final conference memo with the Reiners in May of 2013. There was a lot of documentation of what the Department of Labor's thought process and analysis was here, Your Honor, and the Darling Declaration is simply inconsistent with the rest of the record. I would point there to the August 30th, 2013 letter from Laura Fortman to Congressman Griffin, which was described in the previous appeal by the appellees here as summarizing the agency's reasoning in concluding that real honest consignor volunteers are employees under the FILSA. That letter, Your Honors, is rife with references to ALAMO and to the independent contractor test. It states actually in that letter that there's only one Supreme Court precedent on the question of whether they can be volunteers, and that's ALAMO. That's simply not true, Your Honors. So, as the Court has pointed out, the Walling v. Portland terminal case is the other governing precedent in a not well-precedented field. So, thank you, Your Honors. Thank you. Thank you, counsel. Thank you, counsel. The case is submitted.
judges: Srinivasan, Katsas, Ginsburg